Okay, the next case before the court is Avaya Inc. v. Network-1 Technologies, Inc. Case number 14172, Appeal from the PTAB. Actually, I don't have a reference here. Mr. Tanak, is that how you pronounce it? Tanak, yes. How much time do you want for rebuttal? Ten minutes, please. Pardon? Five for rebuttal. Pardon me? Ten for opening and five for rebuttal. Okay. Okay, you may begin. Good morning. Before addressing the analytical errors that the Board made in failing to consider the non-operational NT1 DTEs in Matsuno that we showed in our blue brief at page 34, I want to address one very important point to make sure it's clear. The Matsuno reference, the circuitry and the design of that network, never will allow the 48-volt remote current to operate any NT1 DTE. The circuit is designed such that the 48-volt serves only as a detection current and it can never operate an NT1 DTE. So you're saying that the Board's finding to that effect is clearly erroneous? Well, it is clearly erroneous in that regard, but analytically what they ended up doing is they looked at a network that Dr. Knox, the patent owner, created that is not the Matsuno device. You didn't argue this in your brief, did you? I thought you only argued that to the extent that you went outside a certain radius, that it wouldn't allow operations. But you didn't say it would never operate. It said throughout all of the briefing. And the reason I'm arguing it this way right here is simply so that you can look at the issue from a sort of a different angle than what Dr. Knox had presented. Throughout our briefing, pages 9 and 10 of the blue brief, 16, 24, 19, 20, 21, 22, all of those pages discuss the operation of Matsuno. And they all say that the 48-volt supply is only available at the NT1 for detection. The second that 48-volt, the end of those two wires, the end of the data signal, the second they touch, a detection current flows. And immediately, Matsuno switches to the power to operate the devices. But the issue that we have to confront on appeal and that you have to contend with, I think, is driven in large part by the claim construction for low-level current, which is a construction I don't believe you're disputing. So that's what's forcing the issue where we have to create this kind of hypothetical world because obviously that 48 volts isn't actually being used in Matsuno to power the DTE. But we're now left in this hypothetical world where we have to ask ourselves whether or not 48 volts is enough to power those devices, those remote devices. Well, I think that's not exactly the correct way to look at this because we did not dispute the claim construction. The claim construction says a current insufficient to operate a device. We think that complies exactly with what Matsuno says. You need the higher power to operate the device. The issue is the construction of the claim says deliver this current insufficient to operate the device to the access device. The importance is what Matsuno discloses. Dr. Zimmerman admitted that Matsuno did not even really address that question, right? What Dr. Zimmerman said was when he was asked a very direct question with respect to will the 48 volts power or does it say expressly in those words whether 48 volts will operate a DTE, which is just not really the access device as we identified it, he said the words aren't there. He simply said, though, it is implied that that's the case. The reason is and what happened here is the board really got twisted around the axle of their own claim construction, which used the words sufficient to operate or current sufficient to operate, whereas Matsuno speaks in terms of power or voltage to operate. The skilled artisan understands those are directly related as a law of nature, Ohm's law. Matsuno talks about you use the high power to operate the NT1 DTE, which is the access device. So you concede, though, because you don't even really argue anything but adherency on appeals, that Matsuno doesn't expressly disclose or anticipate, correct? We have conceded that for the appeal simply because the words are not literally there. However, if I tell you a light switch is on, if I told you it's off also, I mean, they're not off and that's the situation. So then you have a problem. So you've got an expert, Dr. Zimmerman, who does the first declaration where he doesn't really even analyze Matsuno in any kind of detail, does a second declaration that the board says it's only considering for a very limited purpose, right? And then you have Dr. Zimmerman admitting that Matsuno does not talk about whether or not it's sufficient to power. He did not admit that Dr. Zimmerman did not admit that he doesn't talk about insufficient power. He says it's implied in the discussion of the colloquy he had with Mr. Duvall in the deposition. What are we supposed to take away from his testimony that it's not inherent, but it's implied? It's not inherent, but it's suggested? As a layperson, which Dr. Zimmerman is, and not a legal person analyzing Matsuno as one of ordinary skill in the art, he did analyze it in his initial petition and in the initial declaration. He did discuss exactly how it operates. And that's why I made the point up front that Matsuno cannot allow that 48 volts to operate the access device. And if it can't do it, it is insufficient to do it by definition. Network One argued that the 48 volts are available, and I'll quote, to be used by the access device, unquote. That's at A2665, their patent owner preliminary response. So Network One's arguing that the 48 volts are available to be used by the access device. And that's just wrong. Circuit will not allow it. If you're an electrical engineer, you look, it's removed. Matsuno removes the 48 volts immediately. It's only serving for detection. Again, you've got a problem in that if you're arguing inherency, you have to have evidence with respect to inherency. You have an expert that says, well, it's not really inherent, but I think it's kind of implied. And then he says, well, it doesn't really talk to it at all. You're asking us to find that the board clearly aired or didn't have substantial evidence to support its factual conclusion. And yet you can't point us to any evidence in the record other than what you want us to imply from Matsuno. I don't know how you can say that's enough. You have Dr. Zimmerman's second declaration. Which the board did not say it was considering. No, the board specifically said it did consider. For the very limited purpose of looking at the rebuttal, but not for purposes of everything that he presented for the first time. The board said it was not going to allow him to start from scratch. What the board said is the board had already made its prima facie case that we had out against it. It was more likely than not that Matsuno anticipates. The first opportunity that the petitioners had to respond to the claim construction issue, this is just the nature of an IPR proceeding, was in the petitioner's reply to Dr. Knox and to the patent owner's reply. The process of an IPR was we submit the petition, we made our prima facie case, there's anticipation, they then respond. The board came up with this claim construction at that point on its own. The patent owner submits the Knox declaration. But wait, you don't dispute the claim construction. When you say the board came up with it on its own, it was a pretty obvious claim construction, right? You had to anticipate that there was going to be a claim construction. And we don't disagree with the claim construction. Right, so you can't say you were surprised by it. But we did not have an opportunity to rebut what Dr. Knox submitted as all of his evidence. We made out the case prima facie by looking at the original disclosure and the design of the circuit. And that's what Dr. Zimmerman said. The 48 volts is removed, hence it's a low-level current. It's not going to operate. He didn't use those words, but that's exactly what the case has to be. I'm a little confused. Would you acknowledge that you seem to be making a different argument than what I saw in your briefs? I'm not making a different argument. Are you kind of, I don't know, readjusting the argument then? Is that fair to say? Because I'm a little confused based on what I'm hearing now versus everything that I've read before. I'm simply trying to have you look at what Matsuno discloses so that you can see it can't operate. But in the brief, what we argued is that the board made analytical and legal errors because they didn't even use their claim construction when they applied it to Matsuno. The board was asking the wrong question when they were using their own claim construction. They asked the actual network. The correct inquiry for this claim should have been, is there one device that receives current insufficient to operate? Claim six, which is the claim here, is a bit of an odd claim. It starts with the first step that's supposed to be a method, but the first step says build a network. It puts a data access device here, puts a data node here, and it puts one cable between it. That's it. Then the method operates on that network, and it says deliver a current to that one access device that's insufficient to operate it. The board looked at Dr. Knox's evidence where he took the ISDN network and shrunk it down to this arbitrary 4,950-foot radius in which he had preordained some devices he could come up with would operate, and they said, well, we can find one device there that does operate. That's the wrong legal question. The question should have been, is there a device that can't operate? The only way they could come to a conclusion of no anticipation based on looking at what Dr. Knox did is they had to add a limitation into the claim. It had to be deliver a low-level current to an access device that is within 4,950 feet. Okay. You're way into your rebuttal time, so we'll give you what's left. May it please the court. The board made two findings with respect to inherency, and both of those are supported by substantial evidence. Can you explain why is it that Matsuno uses two voltage levels? Yes, Your Honor. The reason is because the 120-volt supply is a constant current circuit. It never applies 120 volts to the subscriber line. It applies a call-for level of current, and it will select the appropriate voltage to get that level of current. But under the prior art from Matsuno, what happened was when the... Let me ask it differently. Why isn't it the first takeaway that 48 volts isn't enough to actually power the remote access device, and that's why you need to crank it up from 48 volts to 120 volts once you get the signal back that the remote device needs power? Because the purpose of Matsuno is to have a continuous operation of the device. The 48 volts was selected because it would provide sufficient power for the DTEs based on where the DTEs are located. In Matsuno, which is... Could you say that again, that the 48 volts is sufficient? Yes. Yes, it is sufficient. But I know that's your position, but I don't see why that is so. The whole point of Matsuno is to try to take as much voltage off the line as possible, and to only use 120 volts when it's absolutely necessary, i.e. when the remote device has been on local power supply. No, Your Honor. Dr. Knox explained this, and his testimony in this was neither subject to cross-examination, not challenged in cross-examination, nor was rebutted. And what he explained was this. The 48 volts, Your Honor, is selected because that's going to be a constant voltage supply, not a constant current supply. It's selected because at the distances we're talking about, in Japan, they have relatively short subscriber lines on the order of 1,500, 2,000 feet. At those distances, we're going to get a couple of volts drop across the subscriber line. The DTE we're dealing with is one that needs at most 40 volts. It could be less, but most 40 volts to operate. If we apply 40 volts direct current to that DTE, it will operate. Dr. Knox explained that the voltage drop across the NT1 would be at most about 1 volt. So if we're getting approximately 48 volts, a couple of volts drop from our 48 volts supply to the NT1, we'll have a further 1 volt drop. We have about 47 at the DTE. It's selected to assure that... But the 48 volt V2 is never actually used to power the DTE and NT1. It's used for a very short time, Your Honor. It's the power that's immediately applied when the local power goes off. Then right after that... Matsuno doesn't say that. Matsuno says once the switch, I believe it's number, numeral eight, closes, then you have the loop detection circuit telling you that, you know, now you're getting the feedback to go ahead and trigger 120 volts to go across the subscriber line to the NT1 DTE. There is a time lapse there, Your Honor, a time gap between... Time lapse that Matsuno doesn't talk about. Well, it's present in the circuit. Dr. Knox talked about it. And it's really not relevant. Did the board talk about it? I don't believe so, not in any detail, Your Honor. And the reason it's not relevant is because the claim construction is, is the current that's going to be supplied by that 48 volts, is it sufficient? Is it at a level that's sufficient to operate? Or was it selected to be at a level that would be too low that it to devices, some of which may be able to accept power, some of which can't. We have to be able to detect which ones can and which ones can't. Matsuno has no concern with that. Every device attached to Matsuno's ISDN will be something that can accept power. So Matsuno's only concern is to make certain that it's going to be powering if there's a low level current... I'm sorry, be powering if local supply goes out. And while local supply is in use to make certain that the because... Is it fair to say that your patented claim about sensing a voltage level in response to the low level current, that is the invention, that claim is directed to sending a low level current all the way out to the remote access device and sensing a voltage level back from the remote access device? In general terms, that's right. Yes. So the low level current is inducing a response from the remote access device. That's right. And Matsuno doesn't do that. It can't do that. The switch is open. That issue, Your Honor, hasn't been addressed at appeal. I'm not certain about that. We had other reasons to conclude. We presented other evidence that there were other elements that were not met by Matsuno, if that's what you're referring to. Were there any other prior art references that were cited to the board in this particular proceeding that the board could have considered for purposes of an obviousness analysis? Yes, the NICOLA. That was a reference that provided really none of the elements except a network. That's all it provided. Are these claims currently under rejection in some other proceeding in front of the PTO? In front of... They're on re-exam, yes. And the initial decision found them to be rejected, correct? That's right, Your Honor. On both anticipation and obviousness counts? I believe so, yes. That's right, Your Honor. We fully expect that to be reversed for several reasons, one of which is that this proceeding stops several of those claims. In addition... But they're different references, right? Yes, that's true. That's true. But it's going to stop the challenge for Claim 6 and 9, for any reference that could have been brought. Is that because those are... Are those inter-parties re-exams? No, it's brought by the same party here, Your Honor. It's an ex-party re-exam? Yes, it's an ex-party, but brought by the same party. And under the AIA, the stop will still apply even in that circumstance. That's for another day. Your Honor, in addition to concluding that the two findings which I was going to point out, Your Honor, is that the first finding is the petitioners did not present evidence. And the only evidence on the low-level current presented by the petitioners was Matsuno itself and a single sentence from Dr. Zimmerman, which is in paragraph 40. We produced it in our red brief on page 47. And in that single sentence, he presents no evidence that that 48 volts would be insufficient to operate, no evidence of inherency whatsoever. That means, and the petition in order to make out a prima facie case. Without any evidence, all they could do is hope to make out a case of express disclosure. That is, they've got the text of Matsuno, they've got no other evidence. From the text of Matsuno, we cannot get express disclosure, they admit that. Now we're left with inherency. They've got no evidence of inherency. The second finding that the board... I thought they did say they have evidence of inherency. The notion that once you go out to 1800 or 18,000 feet, then Matsuno's 48 volts are not going to be able to power a DTE that's out that far. Well, they argued that in their brief, Your Honor, but where's the evidence of that? Where's the 18,000 feet? Did Dr. Zimmerman testify to that? No, Your Honor. One sentence in the declaration. That's the only thing they In his second declaration, he's got various statements, one of which you could infer the sorts of arguments they want to make. All those arguments fail again for the reasons that we've explained in our brief. Your Honor, in Japan, which is where this reference is from, there's no reference to the ANSI standard in Matsuno itself. It refers to ISDN. An ISDN is simply an integrated services digital network, a network that integrates voice and data. That's all it is. It can be one that complies with the standard or one that does not. If this one were to comply with the standard, it would most likely comply with the Japanese standard. The reason is, Your Honor, the ANSI standard doesn't permit applying power on an ISDN. It's not permitted. That means if we turn to the Japanese standard, the only evidence in the record about that is Dr. Knox's testimony. How many volts would be too little volts to power the DTE? How many would be too little? Yeah. It's not set forth in Matsuno. All we know is that something that 40 will do it and something less will do it. It doesn't give us a minimum. It even says something less than 40, but it doesn't say what the floor is. That's right. There's no floor provided. There's no disclosure whatsoever. If this were a very low voltage DTE, for example, a 15-volt DTE, a 12-volt DTE, it could be powered out even beyond the 18,000-foot data standard for ANSI. It could be powered out just using Dr. Knox's calculation. I guess it just seemed to me that Matsuno was agnostic as to what that V2 voltage level ought to be. Why wouldn't it be obvious to have a different voltage level, a lower voltage level? Why is it not obvious? That would be so low that it would be good enough for the loop detection circuit, but it wouldn't be good enough to power the remote access device. Because, Your Honor, the problem we're dealing with here is a circumstance where we've got an Ethernet cable, a cable where we can attach to it devices that may be powered and those that may not. You'll recall that your computer may attach to an Ethernet cable, but now we're going to have some new kinds of devices, maybe phones that are going to attach to it as well. For the first time, now we want to provide power to those devices. Before we didn't. But we've still got all of our legacy devices that are attached and that are going to be attached in the future. Before we apply power, we have to determine, is this a device that will accept power? In that circumstance, the most natural way to approach the problem is not to send a powering current. That's the last thing you want to send. The prior art all taught, never send a powering current if you're trying to send a data signal. So, the prior art taught consistently a way. This was a very unusual way. It was completely... Not Matsuno though. What's that? Matsuno isn't sending a data signal. That's right, but it's not concerned with trying to detect whether something could accept power. It's going to actually send power. It's concerned with making certain that when the local power cuts off... My question was about Matsuno. It wasn't about all these other prior art references. And it wouldn't be obviously Matsuno. Why would you want to send low power? You would want to send power that's going to power it. If the local goes out and there's a problem with the 120 kicking in for a period of time, you want that 48 volts driving your DTE. That's the whole point of it. Recall your... What do you mean that's the whole point of it? Where does it say that in Matsuno? Well, the whole point of Matsuno is to... I'll give you a sentence that's close to it, Your Honor. Return to Matsuno, paragraph 6. An object of the present... I'm reading the last sentence. An object of the present invention is to supply a prescribed power level while maintaining safety by applying a low voltage during local power supply. The local power supply, 48 low volts, is still supposed to be able to power it. It's supposed to do it safely also because it's a constant voltage supply. That's the difference. You're equating the 48 volts, the V2, that's coming out of the main supply unit as the local power supply? No, Your Honor. I'm equating it as one that will be sufficient to provide the prescribed power level. We want to supply the prescribed power level while maintaining safety by applying a low voltage during local power supply and a high voltage during station power supply. That low voltage during local power supply is the 48 volts. It's not the voltage of the local power supply. I just want to be clear. Everything you're saying right now, the Patent Board didn't make a finding on, right? I disagree, Your Honor. It found that about... It found that the V2, 48 volts is enough that it would be used in the way you're saying it would actually power the DTE and NT1, or did it say it just would be capable of? It said it would be sufficient to operate the access device. That was the finding. Sufficient to do it. Now, to actually do it for five minutes, you would need to apply it for five minutes. If you applied it for a tenth of a second, it would power for a tenth of a second. Whatever period of time it's in effect, it's going to power. And the question, Your Honor, is, of course, is it sufficient? Is there no further questions? Thank you. Okay. You have a little over three minutes for rebuttal. Just to address the first point Judge Chen raised, Dr. Knox never talked about any time lapse in this switch, nor does Matsuno. As I think you can understand, the switch is essentially instantaneous. It says in paragraph, I believe it's 56, it's an immediate switch. So that 48 volts, as I've said, is never available to operate. Let's go to the legal and analytical errors that the board did make. The only way, when you look at the diagram that we show here, that they could find that there is no anticipation, is if you deliver a low-level current to a device that is within this one mile. They have to add a cable length limitation. Because in Matsuno, the devices out here would all get current insufficient to operate. But they only have to add that limitation if we agree with you that Matsuno assumes that it's working under the ANSI standards, which in Japan are not applicable. Well, Dr. Knox himself admitted that there'd be non-operational devices outside of his radius. Remember, he calculated that radius, not in a test to see whether devices inside that would be operable. He also said he used very conservative estimates and things like that to illustrate the point that there are many, many, many examples, embodiments, where this particular voltage, 48 volts, would be able to power the DTEs on the end. And with his conservative estimates, as he said, which were all disputed, and the board did not address that, nor did they actually make any determinations to allow you to give a reasoned view of what they did in terms of... Well, sure they did. I mean, they specifically said that they found Dr. Knox's testimony to be more credible. Right. They said that, but what they... Well, but... I mean, that's what they're supposed to do, right? But they need to look at what Dr. Zimmerman said, which is also, for example, Dr. Knox uses the bird reference book. This is the book he picked as the ISDN network, and he takes one parameter out of it and uses other references for others. But they did look at what Dr. Zimmerman said, and they rejected it. Well, Dr. Zimmerman... But there's no analysis why it was Dr. Zimmerman's facts, which he used the bird reference book, he used it for everything it taught, ignored. So they came to a conclusion, but I think, as one skilled nurse would look at this, there's no way to acknowledge why. Why is using a device that didn't exist at the time of Matsuno an appropriate device to consider? It came onto the market 11 years later. They didn't, you know, there's no reasoning as to why that would be good. The, perhaps, I mean, the other way that the board may have limited the claim construction, of course, is they could say that there were many access devices and they all had to receive low-level current. If that was the case, there are many devices in the network, they all have to receive low-level current, then in this situation, if we accept what Dr. Knox said, that there'd be some operational ones, then again, there would be no anticipation. But again, the board, that's not the claim language. The claim language simply says, deliver a low-level current to one access device. The fact of the matter is, is if Mr. Matsuno built his network here in his courtroom, Dr. Knox could never get an access device to operate off of the 48 volts. And the other fact is if... Your time is up. Okay, the cases will all be submitted. The court is adjourned.